IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BONGANI CHARLES CALHOUN | § § § | |
| Petitioner | § § | |
| v. | § § | No. SA-14-CA-155 (No. SA-08-CR-351) |
| UNITED STATES OF AMERICA | § § | |
| Respondent | § § § | |

## MEMORANDUM OPINION AND ORDER

This is a motion to vacate sentence by a federal prisoner under 28 U.S.C. § 2255. Petitioner Bongani Calhoun was charged in a three-count indictment with conspiring to possess cocaine with intent to distribute it (Count One), attempting to possess cocaine with intent to distribute it (Count Two), and possessing a firearm during and in furtherance of a drug offense (Count Three). He went to trial on his plea of not guilty, but the jury convicted him of all three offenses. The Court imposed the minimum mandatory sentences, and the Petitioner appealed. The Court of Appeals affirmed, and the Supreme Court denied certiorari. This motion to vacate sentence soon followed.

In this collateral attack on his conviction, Calhoun asserts three claims: (1) that his trial attorney furnished ineffective assistance; (2) that he was the victim of prosecutorial misconduct, and (3) that he was deprived of a constitutional right to equal protection of the laws. The Court will discuss each of the three

claims individually.

The following facts were established by the evidence: This case was the product of a law enforcement sting operation. Victor Martinez, a professional drug dealer and a co-Defendant in this case, was seeking a source of supply from whom he and his associates could purchase a large quantity of cocaine. A confidential informant introduced them to agents of the Drug Enforcement Administration who were working undercover and pretending to be drug dealers themselves. The agents represented to Martinez and to his associates that they had the ability to supply kilo quantities of cocaine to be delivered in San Antonio, Texas. Martinez and his associates then set about attempting to raise cash to finance the purchase. They contacted Juan Corona, a Houston resident, who in turn contacted Brett Hughs, another Houston resident. Hughs had dabbled in drug dealing but was primarily in the music business, and temporarily down on his luck. He was invited to assist in raising a large sum of money to purchase a large amount of cocaine. Hughs, of course, expected to receive a commission in return for his services.

Petitioner Calhoun was a personal friend of Hughs, with no criminal record and no known history of selling drugs. There is no evidence that he participated in the conspiracy until May 18, 2008, when he traveled with Hughs, Corona, and another co-Defendant called Timothy Owens, from Houston to San Antonio, where the

cocaine purchase was supposed to take place. Calhoun's role in the conspiracy was a limited one: he was scheduled to drive a load vehicle containing the cocaine from San Antonio to Houston.[1] There is a reasonable inference from the evidence that the nine-millimeter handgun which Calhoun possessed, and which resulted in his conviction on Count Three, was there for the purpose of protecting the load.

The Court now turns to Calhoun's specific claims for relief. His claim of prosecutorial misconduct does not require lengthy discussion, because it was urged on direct appeal and rejected by the Court of Appeals.  It is well settled that issues which were raised and decided on appeal may not be re-litigated in the context of a collateral attack such as the present motion to vacate sentence.  **United States v. Rocha,** 109 F.3d 225, 229 (5th Cir. 1997); **United States v. Kalish,** 780 F.2d 506, 508 (5th Cir. 1986), *cert denied* 476 U.S. 1118 (1987).  Further, Calhoun's claim that he was deprived of equal protection of the laws by the prosecutor's improper references to race and ethnicity is essentially a rehash of his claim of prosecutorial misconduct.  Even if the two claims did not overlap, his equal protection argument is confusing.  This is a federal prosecution; there is no "state action" which would implicate the Fourteenth Amendment guarantee of equal protection.

---

[1] There was no actual load vehicle, and for that matter, no actual cocaine.  As noted earlier, this was a law enforcement sting operation.

Although Petitioner also cites the Fifth Amendment, it is unclear as to whether he is attempting to assert a due process claim instead. It is unnecessary to speculate because the claim is barred due to the failure to assert it on direct appeal. A motion to vacate sentence under § 2255 cannot do service for an appeal, and the Petitioner has failed to show good cause for failing to raise the issue on appeal. **United States v. Frady,** 456 U.S. 152 (1982); **United States v. Shaid,** 937 F.2d 228, 232 (5th Cir. 1991) (*en banc*).

Finally, the Petitioner claims that his conviction should be vacated because his defense counsel rendered ineffective assistance. Specifically, he complains that his trial attorney[2] rendered ineffective assistance in two respects: (1) failure to call defense witnesses; and (2) failure to object to the prosecutor's use of racial and ethnic stereotypes.

In order to mount a collateral attack on grounds of ineffective assistance of counsel, a petitioner has the burden of satisfying a two-part test. First he must demonstrate that his counsel's performance was deficient. Second, he must demonstrate that he was prejudiced by that deficient performance. **Strickland v. Washington,** 466 U.S. 668 (1984). With respect to the first prong of the **Strickland** test, the attorney's performance enjoys a

---

[2] Calhoun was represented on appeal by attorney Craig Washington of Houston. He makes no complaint with regard to the performance of his appellate counsel.

presumption of adequacy which the petitioner has the burden of overcoming. **United States v. Acklen**, 47 F.3d 739, 742 (5th Cir. 1995), *cert denied* 519 U.S. 1142 (1997). As to the second prong, a petitioner has the burden of showing that but for counsel's errors, there is a reasonable probability that the outcome would have been different. **Strickland**, 466 U.S. at 696. The failure of a petitioner to establish either prong of the **Strickland** test means that the claim for post-conviction relief must fail.

The history of Petitioner's representation in this Court may be summarized as follows: after he was arrested on May 19, 2008, Petitioner Calhoun requested court-appointed counsel. A Magistrate Judge determined that he qualified, and appointed the Federal Public Defender to represent him (Docket No. 62). Attorney Kurt May of the Public Defender's Office negotiated a plea bargain which would have allowed the Petitioner to plead guilty to an information charging a lesser offense (Docket No. 179). Calhoun actually signed a written plea agreement on June 30, 2010 (Docket No. 188). When he appeared in Court on July 14, 2010, however, he changed his mind, and announced that he desired a jury trial on all charges (Docket No. 202). Attorney May then moved to withdraw as counsel (Docket No. 211), and Jay Moritz was appointed in his stead (Docket No. 216).[3] Accordingly, it was Mr. Moritz who represented the

---

[3] At the time these events occurred, Petitioner's criminal case was assigned to the Honorable Orlando Garcia. It was transferred to the undersigned for trial more than two years later.

Petitioner in his jury trial and who is now being accused of rendering ineffective assistance.

Attorney Moritz is first faulted for failing to call witnesses to testify for the defense. The uncalled witnesses identified by Calhoun were all friends and family members, and their proffered testimony consisted of the following: (1) that Calhoun and Brett Hughs were longtime personal friends; (2) that Hughs was in the music industry, a field in which Calhoun was interested; and (3) that Calhoun possessed a good reputation as an honest and law-abiding person.

Complaints of uncalled witnesses are not favored by the courts, because whether to call a particular witness is a matter of trial strategy, plus the fact that the testimony the witness would have given is too speculative. **Coble v. Quarterman**, 496 F.3d 430, 436 (5th Cir. 2007); **United States v. Harris**, 408 F.3d 186, 190 (5th Cir. 2005). Further, character testimony can be especially risky, because it opens the door to damaging "have you heard" questions concerning specific acts of misconduct, not otherwise admissible. In this case, for example, character witnesses could have been asked on cross-examination if they were aware that Calhoun had received a less than honorable discharge from the Navy because he was found in possession of a prohibited drug (marijuana). In every case, a defense lawyer must balance the potential reward to be derived from calling a witness against the risk of so doing. This

6

is a classic example of a strategic trial decision.

The Court finds it very significant that the testimony of the uncalled witnesses, as disclosed in their affidavits, would have been largely cumulative. **Coble**, 496 F.3d at 436; **Murray v. Maggio**, 736 F.2d 279, 282 (5th Cir. 1984). Attorney Moritz successfully brought out all key elements of this proposed testimony in his effective cross-examination of the Government's star witness, Brett Hughs. For example, Hughs testified that he was involved in the music business full time, including promoting concerts and operating a recording studio; that Calhoun had a keen interest in the music industry; that he and Calhoun had been close personal friends; that they had visited in each other's homes, traveled together to events in Austin and New Orleans, and visited clubs in the Houston area; that Calhoun had not been previously involved in drug deals, and even that Calhoun had a good reputation as an honest and law-abiding citizen. The proposed testimony of the uncalled witnesses would simply not have added appreciably to this store of knowledge. Therefore counsel's decision not to offer cumulative evidence did not constitute ineffective assistance.

The Petitioner next claims that attorney Moritz rendered ineffective assistance by failing to object to the prosecutor's use of racial and ethnic stereotypes. Calhoun, who is African American, took the witness stand in his own defense. He admitted that he was present in a hotel room in San Antonio, Texas, when

several of his co-Defendants displayed thousands of dollars in currency, but he denied knowledge that a drug deal was in progress. On cross-examination, Assistant United States Attorney Ponder asked the following question: "You've got African-Americans, you've got Hispanics, you've got a bag full of money. Doesn't that tell you - a lightbulb doesn't go off in your head and say, this is a drug deal?" (Tr. Dkt. No. 342, p. 127). Moritz did not object to the prosecutor's question.[4] In his summation, however, he attempted to use Ponder's question as proof that the Government was inviting the jury to convict on the basis of racial prejudice instead of evidence. His argument was not particularly forceful nor effective.[5] Nevertheless, it brought about a weak attempt by AUSA Ponder in his rebuttal argument to retreat:

> I got accused by Mr. Moritz of, I guess, racially, ethnically profiling people when I asked the question of Mr. Calhoun, okay, you got African-Americans and Hispanics, do you think it's a drug deal? But there is one element that's missing. The money. So what are they doing in this room with a bag full of money?

(Tr., 167). Attorney Moritz did not object to the prosecutor's argument.

Counsel's failure to object constitutes ineffective assistance, and the first prong of the **Strickland** test has been

---

[4] Calhoun's answer was "No, sir" (Tr. p. 127).

[5] Counsel's statement was: "Government thinks that just because your African-Americans and Hispanics in a room that you have a drug deal. And I hope that we open our minds a little more than that and don't consider that" (Tr. p. 160).

satisfied. The issue, therefore, revolves around the second prong, *i.e.,* whether there is a reasonable probability that but for counsel's error, the outcome of the case would have been different.

A synopsis of Calhoun's theory of defense can be found in his motion to vacate sentence: "In general, Calhoun's defense was that he accompanied an acquaintance and other people from Houston to San Antonio to go to clubs. He denied any knowledge of the drug deal or planned drug deal" (Dkt. No. 392, p. 3). Lack of knowledge is a typical defense to any drug-related charge. In the absence of the rare confession, the prosecution must rely upon circumstantial evidence to establish the element of knowledge.

On direct appeal, the Court of Appeals characterized the evidence against Calhoun as "strong." **United States v. Calhoun**, 478 Fed.Appx. 193, 194-95 (5th Cir. 2012). The Court agrees. The evidence was more than sufficient to prove Calhoun's guilt to a moral certainty and beyond a reasonable doubt. The testimony of Brett Hughs and of two undercover drug agents who spoke with Calhoun in the Best Buy parking lot was especially devastating, and Calhoun's own explanation of his presence at the crime scene with a loaded firearm at his waist and $2,500 cash in his pocket lacks credibility. His claim that a group of veteran drug dealers had invited him, an innocent bystander, to travel to San Antonio and to be present as a spectator while they committed a felony offense in his presence strains credulity far beyond the breaking point. The

Court finds that he has failed to sustain his burden of establishing any reasonable probability that but for the prosecutor's improper reference to race and ethnicity, the outcome would have been different. Therefore, the motion to vacate sentence should be denied.

IT IS THEREFORE ORDERED that the motion to vacate sentence under 28 U.S.C. § 2255 be, and it is hereby, DENIED.

SIGNED AND ENTERED this 16th day of June, 2014.

/s/ Harry Lee Hudspeth
HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE